UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18bk24763 |
| | ) | |
| Rosebud Farm, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

MEMORANDUM DECISION

TIMOTHY A. BARNES, Judge.

Before the court is the Trustee's Objection to Claim No. 4 of Longo and Associates Ltd./Joseph Anthony Longo [Dkt. No. 119] (the "Objection"), filed by the Alex D. Moglia, the chapter 7 trustee (the "Trustee"), as amended and in part superseded by the Trustee's Sur-Reply to Amended Claim Filed by Longo and Associates Ltd[.]/Joseph Anthony Longo [Dkt. No. 143] (the "Sur-Reply"), objecting to the secured status and to the amount of Claim Nos. 4-1, 4-2, 4-3 and 4-4 (collectively, the "Claim"), filed by Longo and Associates Ltd. and Joseph Anthony Longo (collectively, "Longo") on the ground that Longo has failed to establish the secured status of the Claim or entitlement to an amount greater than $615,257.21.

For the reasons stated herein, the Trustee has overcome the presumptive validity of the Claim as to its amount and secured status, and has shifted the burden to Longo to show that the Claim is secured and is allowable in an amount greater than the amount to which the Trustee concedes Longo is entitled. Longo has failed to establish the secured status of the Claim and to show entitlement to a claim in an amount greater than $615,257.21. Accordingly, the Objection, as amended by the Sur-Reply, will be sustained and the Claim will be allowed as a general unsecured claim in the amount of $615,257.21.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the

Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The Objection seeks a determination by the court whether a claim should be allowed or disallowed pursuant to 11 U.S.C. § 502. This contested matter, concerning the allowance or disallowance of a claim against the bankruptcy estate, is expressly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Further, in accordance with *Stern,* 564 U.S. at 499, the court has constitutional authority to decide claim objections, as such objections may arise only in a case under the Bankruptcy Code and necessarily stem from the bankruptcy case itself. *In re Montalbano,* 486 B.R. 436, 438–39 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Lenior v. GE Capital Corp.* (*In re Lenior*), 231 B.R. 662, 667 (Bankr. N.D. Ill. 1999) (Schmetterer, J.); *Knox v. Sunstar Acceptance Corp.* (*In re Knox*), 237 B.R. 687, 693 (Bankr. N.D. Ill. 1999) (Schmetterer, J.)).

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Objection.

## PROCEDURAL HISTORY

In addition to reviewing the Objection, the Claim and the Sur-Reply, the court has considered the arguments of the parties at the hearings held on December 3, 2019, December 18, 2019 and January 29, 2020, and has reviewed and considered the following documents:

(1) Response of Longo and Associates Ltd./Joseph Anthony Longo to Trustee's Objection to Proof of Claim [Dkt. No. 132] (the "Response");[1] and

(2) The Trustee's Reply to Longo and Associates Ltd./Joseph Anthony Longo's Response to Trustee's Objection to Claim No. 4 [Dkt. No. 139] (the "Reply").

---

[1] The Response superseded a prior version of the same document, filed at Dkt. No. 131, which contained a legal memorandum identical to that in the Response, but omitted the attached exhibits. *See* Response of Longo and Associates Ltd./Joseph Anthony Longo to Trustee's Objection to Proof of Claim [Dkt. No. 131].

The court has taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in this case, the court has taken judicial notice of the contents of the docket in this case. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

Having conducted such review, this Memorandum Decision constitutes the court's determination of the Objection and the amount and secured status of the Claim.

FINDINGS OF FACT[2]

From the above review and the consideration of the procedural background, as well as of the evidence submitted by the parties,[3] the court determines the salient facts to be and so finds as follows:

A.  The Prepetition Action

   1. This matter arises from a prepetition lawsuit brought against the debtor, Rosebud Farm, Inc. (the "Debtor"), in the District Court for the Northern District of Illinois on December 23, 2011. *See Smith v. Rosebud Farm, Inc.*, Case No. 11-cv-09147 (N.D. Ill. filed December 23, 2011) (the "Prepetition Action"). Longo represented the plaintiff, Robert Smith ("Smith"), in the Prepetition Action.

   2. Final judgment in the Prepetition Action was entered against the Debtor and in favor of Smith on July 24, 2017, effective retroactively from July 14, 2017, in the amount of $559,656.57. Judgment in a Civil Case [Prepetition Action, Dkt. No. 339] (the "Judgment").

   3. The Judgment was recorded with the Cook County Recorder of Deeds on September 18, 2017, which placed a judgment lien on the Debtor's real estate in Cook County. Memorandum of Judgment, filed as Claim No. 4-4, at pp. 1–4 (the "Recorded Judgment").

   4. The Judgment was later affirmed on appeal, on August 2, 2018. *See Smith v. Rosebud Farm, Inc.*, 898 F.3d 747 (7th Cir. 2018).

   5. On August 23, 2018, the District Court awarded Longo attorney's fees under a federal fee shifting statute in the amount of $611,388.50 and costs in the amount of $3,868.71, for a total $615,257.21, to be paid by the Debtor. Memorandum Opinion

---

[2] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

[3] An evidentiary hearing was deemed unnecessary in this matter as no material fact submitted to the court was in dispute; rather, only the conclusions to be drawn from such facts were disputed. *See United States v. Raddatz*, 447 U.S. 667, 677 (1980) ("The guarantees of due process call for a 'hearing appropriate to the nature of the case.'" (citation omitted)).

3

and Order [Prepetition Action, Dkt. No. 474] (the "Fee Award"). Longo had sought attorney's fees and costs in the amount of $1,396,358.71.

B. Postpetition Proceedings

6. Shortly after the Fee Award was entered and the Judgment affirmed on appeal, on August 31, 2018, the Debtor filed the above-captioned bankruptcy case.

7. On February 4, 2019, Longo filed Claim No. 4-1, thereby asserting a secured claim against the estate for attorney's fees and costs in the amount of $1,780,258.71. *See* Claim No. 4-1.

8. After Longo's attempts to modify the automatic stay to seek collection on the Claim in District Court, to dismiss this case and to stay all proceedings in this case were unsuccessful, *see* Orders [Dkt. Nos. 48, 52, 60], and the denial of Longo's appeal of the court's denial of his request for dismissal of this case, *see* Order [Dkt. No. 82], on October 28, 2019, the Trustee filed the Objection.

9. After obtaining an extension of the time to respond to the Objection, *see* Order Extending Time to Respond to Claim Objection [Dkt. No. 130], Longo filed the Response, which includes additional documentary support for the Claim not attached to Claim No. 4-1. *Compare* Claim 4-1 *with* Resp., App. 1–21.

10. The Trustee timely filed his Reply.

11. On January 28, 2020, without leave of court, Longo filed new documentary materials in support of the Claim on the claims docket as Claim Nos. 4-2, 4-3 and 4-4. *See* Claim Nos. 4-2, 4-3, 4-4 (the "Additional Documents").

12. The Additional Documents were filed on the eve of the continued hearing on the Objection, after the Objection had been fully briefed according to the court's scheduling orders, and without including the amended proof of claim form, despite being filed on the claims docket as if the materials themselves were amended proofs of claim. *See id.*

13. At the January 29, 2020, hearing on the Objection, Longo orally sought leave to conduct additional discovery and the Trustee objected both to the taking of discovery after the matter was fully briefed and to the inclusion of the Additional Documents in the court's determination of the Objection.

14. Despite the procedural issues described in Paragraphs 12 and 13 above, for the purposes of considering the Claim on the merits, the court determined that it would consider the Additional Documents. Scheduling Order [Dkt. No. 142]. While no additional discovery was permitted at that time, on March 4, 2020, the court gave the Trustee until March 20, 2020, to file a sur-reply regarding the Additional Documents. *Id.*

15. The Trustee timely filed the Sur-Reply and conceded therein that Longo is entitled to a general unsecured claim in the amount of the Fee Award, $615.257.21.[4] Sur-Reply, at p. 1.

The Trustee's concession regarding Longo's entitlement to a general unsecured claim in the amount of the Fee Award limits the scope of the Objection to two outstanding issues on the merits: (1) whether the Claim is secured; and (2) whether the Claim may be allowed in an amount greater than the amount set forth in the Fee Award. Also remaining for decision is Longo's oral request at the January 29, 2020, hearing for discovery in this matter, which the court will address before taking up the remaining issues.

CONCLUSIONS OF LAW

A. Longo's Request to Take Discovery

Before reaching the substantive issues raised by the Objection, the court first addresses Longo's outstanding request to take discovery. Claim objections, such as the Objection here, initiate contested matters. Fed. R. Bankr. P. 3007 advisory committee's note ("The contested matter initiated by an objection to a claim is governed by rule 9014 . . . ."); *Miller v. Bodenstein* (*In re Peregrine Fin. Grp., Inc.*), Case No. 12-27488, 2015 WL 2237201, at *4 (Bankr. N.D. Ill. May 13, 2015) (Doyle, J.) ("The validity of a claim is adjudicated through a claim objection, which is a contested matter governed by [Bankruptcy] Rule 9014."). In contested matters, some, but not all, of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") regarding adversary proceedings apply. The rules automatically applicable to contested matters include Bankruptcy Rule 7026, except for Fed. R. Civ. P. 26(a)(1)–(3) and (f), and Bankruptcy Rules 7027 to 7037. The court has discretion to apply the other Bankruptcy Rules applicable to adversary proceedings to contested matters. Fed. R. Bankr. P. 9014(c).

A discovery conference and disclosures were not required here and Longo has had all the regular means of discovery available to him throughout this contested matter. If the taking of discovery was necessary herein, Longo should have requested such discovery after the Objection was filed on October 28, 2019. *Khachikyan v. Hahn* (*In re Khachikyan*), 335 B.R. 121, 127 (9th Cir. B.A.P. 2005) ("[W]here one wants discovery in a contested matter, it is generally too late to wait to the day of the hearing on the merits to request to conduct discovery in the future."); *Elliott v. PHH Mtg. Corp.*, Case No. 15cv01221, 2017 WL 10153593, at *7 n.8 (N.D.N.Y. Mar. 3, 2017) (same). As the *Khachikyan* court pointed out, as "the mandatory disclosure requirement of Civil Rule 26 does not apply to contested matters, there is no impediment to immediately seeking discovery." *Id.*. Instead of seeking discovery, Longo sought additional time to file a response brief, which extension the court granted, and otherwise proceeded with briefing the Objection as if discovery was unnecessary. Despite the lack of formal discovery procedures being ordered by the court, Longo

---

[4] The plain language of the Fee Award appears to give a claim for fees and costs to be paid by the Debtor to the plaintiff in the Prepetition Action, *i.e.* Longo's client, Smith, not Longo. *See* Fee Award, at p. 38. The court, however, need not address whether the Fee Award gives Longo an unsecured claim in this case as the Trustee has already conceded that point. Sur-Reply, at p. 1; *see In re Isherwood*, Case No. 18-10761, 2019 WL 885876, at *4 (Bankr. D. Md. Feb. 20, 2019) (claims remain allowed except to the extent of any objection based on the grounds enumerated in 11 U.S.C. § 502(b)).

5

filed hundreds of pages of additional documents in support of the Claim (albeit on the eve of the continued hearing on the Objection and after the matter had already been fully briefed).

Only after all of the foregoing did Longo make a request for discovery in this contested matter. In making his oral request for discovery at the January 29, 2020, hearing, Longo indicated he would primarily be seeking discovery information or materials related to the notice or notices mailed or recorded when the Prepetition Action was initiated. According to Longo, such documents would support his contention that the Claim is secured. This request and any argument regarding these alleged missing documents were not made in Longo's filings prior to the January 29, 2020, hearing.

In the interest of reaching the merits of this dispute, the court has already determined that it will consider the Additional Documents despite the procedural deficiencies therewith, and therefore gave the Trustee the opportunity to file a sur-reply in response to such new materials. *See* Scheduling Order [Dkt. No. 142]. What the court will not do at this stage, however, is allow the parties to relitigate the Objection by conducting discovery after the matter has been fully briefed. *See Khachikyan*, 335 B.R. at 127. The substance of the Objection, mainly the Claim's secured status, was known to Longo since the filing of the Objection in October 2019.

As such, Longo's request to take discovery in this contested matter is denied.

B.  The Trustee's Challenge to the Secured Status of Longo's Claim

As the Trustee has agreed that Longo has a general unsecured claim for the amount of the Fee Award, the issues remaining are whether the Claim is secured and whether the Claim is entitled to recover over the amount set forth in the Fee Award. As to the former, Longo relies on three theories to assert that the Claim is secured: First, that the Recorded Judgment secured the later Fee Award; Second, that the Claim is secured under the Illinois Attorneys Lien Act, 770 ILCS 5/0.01 *et seq.* (the "Attorneys Lien Act"); and last, that the Claim is secured by an equitable lien. As discussed below, none of these theories prevails. The Fee Award was never recorded and judgment liens arise on a judgment-by-judgment basis; therefore, the Claim is not secured by virtue of the earlier Recorded Judgment, which does not refer to attorney's fees. Longo also has not shown that the requirements of the Attorneys Lien Act have been met with respect to the Claim. Finally, and similarly, there are insufficient facts in this matter to support the existence of an equitable lien in any bankruptcy estate assets to secure the Claim.

1. *The Recorded Judgment Does Not Secure the Claim*

Longo claims he has a security interest in property of the Debtor's bankruptcy estate, which interest, he contends, was created by the Recorded Judgment—the Judgment he obtained and recorded for his client, Smith, against the Debtor. The Fee Award, which was issued later by the District Court and forms the basis for the Claim, however, was never recorded.

Under applicable nonbankruptcy law, here Illinois state law, "a judgment is a lien on the real estate of the person against whom it is entered . . . only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." 735 ILCS § 5/12-101. To create a judgment lien, the recorded judgment must be "signed by a judge or a copy attested by the clerk of the court entering it and showing the court in which entered, date, amount, number of the case in which it was entered, name of the party in

whose favor and name and last known address of the party against whom entered." *Id.* Strict compliance with the above statute is required for a judgment lien to arise. *Maniez v. Citibank, F.S.B.*, 890 N.E.2d 662, 665 (Ill. App. Ct. 2008).

Longo's position conflates the Recorded Judgment, which was recorded on September 18, 2017, with the Fee Award, entered on August 23, 2018, which was not recorded. The Recorded Judgment is an award of damages against the Debtor in favor of Longo's client, Smith. The Recorded Judgment does not on its face contain any reference to an award of attorney's fees to Longo, in any amount. To create a judgment lien securing a claim, the judgment when recorded must show on its face, among other things, the amount of the claim to be secured and the name of the party in whose favor the claim lies. 735 ILCS § 5/12-101. Without strict compliance with the statute, the Recorded Judgment cannot serve to secure the Claim. *Maniez*, 890 N.E.2d at 665. The Recorded Judgment is insufficient to secure a claim to attorney's fees arising under the subsequent Fee Award, entered on the August 23, 2018.

Longo's argument to the contrary, based on the appearance of the word "costs" in the Recorded Judgment, is unconvincing. The term "costs" does not include "fees" as a matter of regular usage and as those terms are normally used in the legal context. *See Negro Nest, LLC v. Mid-Northern Mgmt., Inc.*, 839 N.E.2d 1083, 1989–92 (Ill. Ct. App. 2005) (surveying Illinois law applicable in a variety of contexts regarding whether attorney's fees can be read into the term costs or the phrase collection costs and determining that such a reading was not reasonable). Even were such costs capable of sustaining the later Fee Award, Longo is not listed in the Recorded Judgment as the name of the party in whose favor the claim lies—Smith is.

Under the foregoing, Longo's client, Smith, would appear to be entitled to a secured claim arising from the Recorded Judgment, but Longo is not. Smith has filed just such a secured claim, albeit filed well after the bar date in this case, but only for the Judgment amount. Claim No. 5.[5]

Longo has presented no evidence that the Fee Award, upon which the Claim is based, was ever recorded. Longo further has cited to no authority, and the court has not been able to locate any authority, for the proposition that an unrecorded judgment order, such as the Fee Award, can give rise to a judgment lien for a sum certain (the amount of the Fee Award) based on the recordation of a prior judgment or order in the same action. Accordingly, Longo cannot rely on the Recorded Judgment as the basis for the secured status of the Fee Award.

    2.    *The Claim Is Not Secured by Virtue of the Attorneys Lien Act*

Longo's second theory is that the Claim is secured pursuant to the Attorneys Lien Act. This argument is equally unconvincing, but for different reasons.

---

[5] Smith's lack of participation in this case has been troubling, at best. Though Longo's claim, if allowed as secured, would result in Smith's claim being required to share in assets under section 725 of the Bankruptcy Code, Smith has never appeared or taken a position with respect to the issues considered herein and has reportedly not been responsive to inquiries from the Trustee's counsel. This is of particular concern given that Longo, who has made it clear that he no longer represents Smith, has nonetheless made statements in court that he has been communicating with Smith regarding these proceedings. This is, however, beyond the scope of the matter at bar and the court has not considered these circumstances in reaching today's conclusions.

The Attorneys Lien Act governs aspects of the relations between Longo and Smith, Longo's client. If certain conditions are met, such Act gives an attorney a lien "upon all claims, demands and causes of action" pursued by the attorney on behalf of the client in an amount set by agreement or, in the absence of a contractual term setting the amount of fees, a reasonable amount. 770 ILCS § 5/1. Actual notice of the lien must be given by the attorney to the opposing party and "attorneys shall serve [such] notice in writing . . . by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action." *Id.* The lien will attach only "from and after" the time of such service. *Id.*

Strict compliance with the terms of the Attorneys Lien Act is required. *In re Del Grosso*, 111 B.R. 178, 182 (Bankr. N.D. Ill. 1990) (Squires, J.) (*citing Crabb v. Robert R. Anderson Co.*, 254 N.E.2d 551, 553 (Ill. Ct. App. 1969); *Unger v. Checker Taxi Co.*, 174 N.E.2d 219, 221 (Ill. Ct. App. 1961)). Specifically, the following conditions must be present for an enforceable lien to exist: (1) The existence of an attorney-client relationship whereby the attorney is to pursue the claim on the client's behalf; (2) Proper service of the notice of attorney's lien on the opposing party during the existence of such attorney-client relationship; and (3) Such opposing party must actually receive the notice. *Del Grosso*, 111 B.R. at 182 (*citing Olsen v. Russell (In re Kleckner)*, 93 B.R. 143, 145 (N.D. Ill. 1988); *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 973–74 (Ill. 1979); *Dep't of Pub. Works v. Exchange Nat'l Bank*, 417 N.E.2d 1045, 1048 (Ill. Ct. App. 1981)). In other words, "an attorney who fails to serve a party via registered or certified mail has no lien under the statute." *Chi. Title & Tr. Co. v. Chi. H & S Hotel Prop., LLC (In re Chicago H & S Hotel Prop., LLC)*, 419 B.R. 797, 801 (N.D. Ill. 2009) (internal citation omitted).

Despite filing hundreds of pages of documents, Longo has failed to submit the necessary proof to show the existence of a lien in his favor under the Attorneys Lien Act. In particular, Longo has presented no evidence to show that he met his burden to serve the notice required by the statute upon the Debtor via one of the statutorily-mandated methods or that the Debtor actually received such notice. *Id.* (holding that no attorney's lien arose under the statute where an attorney has failed to show that the opposing party in the underlying suit had received actual notice of the lien).[6]

Even had Longo presented sufficient evidence of the missing notice to the Debtor, Longo has not demonstrated the existence and terms of the attorney-client relationship between him and Smith.[7] The only agreement submitted by Longo that relates to the attorney-client relationship between Longo and Smith, or otherwise to the requirements under the Attorneys Lien Act, is a November 1, 2011 document entitled "Assignment of Claim for Attorneys' Fees," signed by Smith. *See* Claim No. 4-2, at p. 8 (the "Assignment"). The Assignment states that Smith "assigns all claims for attorneys' fees arising from or relating to any and all claims that the undersigned has or may have against the respondent[s]/defendants for employment discrimination, retaliation, wages, employee benefits, civil rights violations, or under any lawsuit or administrative proceeding arising from any

---

[6] The court is aware that this missing information may be what Longo sought by his ill-timed request for discovery. As noted above, the timing of such request was in Longo's control and this lack of evidence—putting aside the obvious fact that it was Longo himself that should be the source of this evidence as it would have been created by him—was also in his control.

[7] While the court has referenced Longo's representation of Smith generally in the Prepetition Action, it is quite another thing and a higher standard to be met in showing the necessary relationship under the Attorneys Lien Act.

8

and all of those claims." *Id.* This document, without more, is insufficient to evidence a lien under the Attorneys Lien Act.[8]

In the absence of a showing by Longo that he has properly complied with the requirements of the Attorneys Lien Act, the court cannot conclude that the Claim is secured by virtue of the provisions of that statute.

3.  *The Claim Is Not Secured by an Equitable Lien*

Longo also asserts that an equitable lien exists on Smith's recovery against the Debtor in order to secure the Claim for attorney's fees is appropriate. This position fails, again because Longo has not submitted the necessary proof for the court to conclude that an equitable lien for attorney's fees has arisen or should be imposed in this matter.

Under Illinois law, equitable liens for attorney's fees will arise where the contract between the attorney and the client assigns a *res* or some portion thereof, usually the expected recovery in the suit in which the attorney will represent the client, to the attorney as a means of recovery. *See Lewis v. Braun*, 191 N.E. 56, 60–61 (Ill. 1934). The agreement must impose the obligation of payment of the attorney's fees on a specific *res*, such as an agreement that the attorney will be paid out of a certain percentage or portion of the recovery, as opposed, by contrast, to a promise by the client to pay the fees using certain funds. *See, e.g., id.* at 57–58, 60–61; *Hull v. Culver*, 32 N.E. 265, 267 (Ill. 1892); *Dep't of Pub. Works*, 417 N.E.2d at 1048 (*citing Cameron v. Boeger*, 65 N.E. 690, 693 (Ill. 1902)). Thus, equitable liens for attorney's fees depend on the particular contractual language of the agreement or agreements governing the attorney-client relationship and are not imposed as a matter of law in the absence of evidence that the parties intended such a lien to attach to a specific *res*. *See Lewis*, 191 N.E. at 60–61; *Cameron*, 65 N.E. at 693; *Dep't of Pub. Works*, 417 N.E.2d at 1048; *see also, e.g., LaSalle Bank, N.I. v. First Am. Bank*, 736 N.E.2d 619, 627 (Ill. Ct. App. 2000) (applying the same principles to deny a request to impose an equitable lien where the language of a contract for the sale of land did not support the existence of such a lien).

Without being able to examine the specific terms of the agreement or agreements governing the attorney-client relationship between Longo and Smith, the court cannot apply the above case law to determine whether an equitable lien exists in favor of Longo in this matter. The existence of an equitable lien depends on the contractual language governing the payment of Longo's fees in the Prepetition Action. *See Lewis*, 191 B.E. at 60–61 (examining the language of the contract to determine whether an equitable lien arose); *Cameron*, 65 N.E. at 693 (same); *Hull*, 32 N.E. at 267 (same); *Dep't of Pub. Works*, 417 N.E.2d at 1048 (same). As noted above, the only agreement between Longo and Smith that is before the court is the Assignment. The language of the Assignment makes no reference to a specific *res* or a portion of such a *res* and on its face is insufficient to create an equitable lien for attorney's fees.

---

[8]  Language assigning the client's claim for fees against an adversary to the client's attorney is not necessary under the Attorneys Lien Act as there is no statutory language to that effect. *Kespohl v. N. Tr. Co.*, 236 N.E.2d 268, 271 (Ill. Ct. App. 1968). What is necessary, however, is compliance with the requirements actually set forth in the statutory text. *See, e.g., Chicago H & S Hotel*, 419 B.R. at 801.

9

Accordingly, Longo has not met his burden to show the existence of an equitable lien under Illinois law for attorney's fees in this matter.

C.    *The Amount of the Claim*

The last remaining issue for the court is the determination of the amount of the Claim. The Trustee has conceded that the Claim is valid up to the amount of the Fee Award—$615,257.21. Longo maintains, however, that he is entitled to the amount set forth on the Claim—$1,780,258.71—which exceeds the amount Longo asked the District Court to award him in the Prepetition Action. Fee Award, at p. 3 (stating that the amounts sought by Longo in the Prepetition Action were $1,392,420.00 in fees and $3,868.71 in costs). Longo has filed hundreds of pages of time entries, affidavits and other documentation in support of the Claim, the vast majority of which were already presented to the District Court in the Prepetition Action. *See* Claim Nos. 4-2A, 4-2B, 4-3 and 4-4. Longo is, in effect, seeking to relitigate his entitlement to attorney's fees in the Prepetition Action, an issue already determined by the District Court.

Longo has failed to meet his burden to establish that the Claim should be allowed in an amount greater than the Fee Award. The District Court in the Prepetition Action already considered the same arguments and evidence presented by Longo now and determined that Longo was entitled to fees and costs totaling $615,257.21. *See* Fee Award, at pp. 1–3. The matter has, therefore, already been litigated and finally determined by the District Court in the Prepetition Action. The District Court conducted an extensive, detailed analysis using essentially the same approach as the court would take were it to examine Longo's fees in the first instance. *See id.* at pp. 3–30. The District Court examined in detail the hourly rate Longo charged, *id.* at pp. 5–11 (determining that the requested rate of $550.00 per hour was unreasonable and reducing the rate to $360.00 per hour), and then considered in even greater detail the number of hours billed. *Id.* at pp. 11–28 (reducing the hours on account of excessive or improper filings, clerical or administrative tasks billed by an attorney, block billing and overly vague time entries and excessive or redundant tasks). There is no reason, based on the Fee Award itself and the evidence submitted by Longo in support of the Claim, to question the soundness or accuracy of the analysis set forth in the Fee Award.

Accordingly, the Claim will be allowed in the amount awarded to Longo in the Prepetition Action after his claim for attorney's fees and costs was fully litigated and finally determined in such action—$615,257.21.

CONCLUSION

For the reasons set forth herein and by separate order entered concurrently herewith, the Objection, as amended by the Sur-Reply, will be sustained and the Claim will be allowed as an unsecured claim in the amount of $615,257.21.

Dated: August 25, 2020                                    ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

10